UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IVOCLAR VIVADENT, INC.,                                         04-CV-0264E(F)
                    Plaintiff,

        -vs-

CARGUS INTERNATIONAL, INC.,                                    MEMORANDUM
                    Defendant and
                    Counterclaimant,                           and

        -vs-                                                   ORDER[1]

IVOCLAR VIVADENT, INC,
                    Counterdefendant,
            and
IVOCLAR VIVADENT, A.G. and
PETERSON DENTAL SUPPLY, INC.,
                    Additional Counterdefendants.

---

## INTRODUCTION AND BACKGROUND

Plaintiff Ivoclar Vivadent, Inc. ("Ivoclar") commenced this action and three

others[2] on April 5, 2004 against defendant Cargus International Inc. ("Cargus"),

and the other defendants in those actions, alleging, *inter alia,* trademark

infringement and dilution (15 U.S.C. §§1114 & 1125), unlawful importation (15

U.S.C. §1124 and 19 U.S.C. §1526), misappropriation and unfair competition with

regard to certain of its registered and unregistered trademarked dental products.

An amended complaint was filed July 27, 2004 (Dkt. #9) and on December 13,

---

[1] This decision may be cited in whole or in any part.

[2] Case numbers 04-CV-0261E(F), 04-CV-0262E(F) and 04-CV-0263E(F).  All cases have
similar motions pending that will be resolved in similar but separate Orders.

2004 Cargus filed its answer [3] with counterclaims (Dkt. #14).  On March 8, 2005

Ivoclar filed its reply to the counterclaims (Dkt. #19) and on September 23, 2005,

also filed a motion pursuant to FRCvP 12(c) to dismiss those counterclaims (Dkt.

#23), which motion is currently pending before the Court.  Also pending are

Cargus's motions for a protective order (Dkt. #29) and to compel (Dkt. #33) and

Ivoclar's motions to compel (Dkt. #37) and for a stay (Dkt. #38).

The Amended Complaint alleges the following.  Ivoclar is in the business

of marketing, distributing and selling dental products nationally and

internationally.  Cargus is a New York corporation in the business of selling and

distributing, among other things, dental products.  Ivoclar has valid and

inherently distinctive trademarks with regard to certain enumerated dental

products and claims a carefully cultivated reputation for excellent product quality,

customer service and reliability.  Cargus unlawfully and willfully gained

possession of and imported some of Ivoclar's trademarked products (those

enumerated in the complaint) and sold them without Ivoclar's permission or

consent.  Further, Cargus distributed the products without the high quality

advertising and marketing that Ivoclar demands, with insufficient inspection,

quality control, labeling, packaging[4] and warranties, hence making them

---

[3] After a motion for a more definite statement was resolved.

[4] *I.e.*,including the failure to enclose the requisite safety information such as the Material Safety Data Sheets as required by the Occupational Safety and Health Administration.

materially different from the products as sold and distributed by Ivoclar and its authorized distributors.  As such, Ivoclar claims that its customers were likely to be misled, confused or deceived as to the source of the products and that the distinctive quality of Ivoclar's trademarks and the integrity of its business reputation were threatened.  Ivoclar further alleges that Cargus refused to stop selling its products or identify their source of supply when so requested by Ivoclar, and continues to engage in the alleged unlawful practices.  The complaint seeks, *inter alia*, a permanent injunction, an accounting, constructive trust, treble damages, attorney's fees and costs.

Cargus's counterclaims seek (1) a judicial declaration under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.* ("the DJA") that Cargus is not liable to Ivoclar under any of the claims asserted in the complaint and that Ivoclar and the additional named defendants, Ivoclar Vivadent, A.G. (Ivoclar's foreign parent corporation — hereinafter "IvoclarAG") and Peterson Dental Supply (an authorized Ivoclar distributor — hereinafter "Peterson")[5], are liable to Cargus for the remaining counterclaims contained therein["Count I"]; (2) judgment against the counterclaim defendants for violations of Section 1 of the Sherman Act (15 U.S.C. §1), the Wilson Tariff Act (15 U.S.C. §8) and the New York Donnelly Act (Article 22, section 340 of the New York General Business Law) ["Counts II, III

---

[5] When referred to collectively, these parties shall be referred to as "the counterclaim defendants".

and IV", respectively]; (3) judgment against the counterclaim defendants for tortious interference with prospective and advantageous business relations and civil conspiracy ["Counts V and VI", respectively]; and (4) cancellation of Ivoclar's trademark registrations pursuant to Section 37 of the Lanham Act (15 U.S.C. §1119) ["Count VII"].    The counterclaim defendants have replied to the counterclaims and now move this Court for their dismissal for failure to state a claim upon which relief can be granted.

## **DISCUSSION**

At the outset, the Court finds that because Count I of the counterclaims seeks declaratory relief for exactly the same claims enumerated in both the underlying suit and the remaining counterclaims, it is duplicative and redundant and shall be dismissed. *See generally, Wilton* v. *Seven Falls Co.,* 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to etnertain an action under the [DJA] ₓₓₓ."). Hence, only Counts II through VII of the counterclaims remain.

The counterclaim defendants have sought a judgment on the pleadings. Judgment on the pleadings pursuant to FRCvP 12(c) is appropriate "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers* v. *M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The standard for granting a Rule 12(c) motion is the same as that of a Rule 12(b)(6) motion for failure to state a

claim, in that the district court must accept the allegations in the complaint (or counterclaim, as the case may be) as true and draw all inferences in the non-moving party's favor. *Patel* v. *Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001)*(citing Irish Lesbian & Gay Org.* v. *Giuliani*, 143 F.3d 638, 644 (2d Cir.1998), *Sheppard* v. *Beerman,* 18 F.3d 147, 150 (2d Cir.1994) and *Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n* v. *Bernard M. Baruch Coll.*, 835 F.2d 980, 982 (2d Cir.1987)).  In other words, the Court is required to read a complaint generously, accepting the material facts alleged therein as true and drawing all reasonable inferences from the complainant's allegations. *California Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Frasier* v. *Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

The material facts[6] which the Court accepts as true and which form the underpinning of the remaining Counts of Cargus' counterclaims are as follows. Cargus is a New York based importer and distributor of dental supply products and sells such products in United States interstate commerce.  Included among the products Cargus imports into and distributes in the United States are the Ivoclar Vivadent products which are the subject of the instant suit and are manufactured by IvoclarAG outside of the United States.  Cargus purchases the

---

[6] The 101 paragraphs of Cargus's counterclaims contain some factual allegations and many statements which are neither material nor factual and consist mainly of argument and conclusion.  While the Court will give all reasonable inferences to the alleged facts, only these *facts* will be considered as true and not the arguments or conclusions.

products outside of the United States (from either IvoclarAG directly or from one

of IvoclarAG's authorized distributors) and sells them in the United States to

dental supply companies who market directly to dentists[7].   The cost of the

products when imported, purchased and sold in this manner is substantially

lower than their cost when purchased inside of the States from Ivoclar.  Cargus

is therefore able to offer and sell them to the dental supply companies, and

ultimately their customers, at competitive prices.  The Ivoclar Vivadent products

Cargus sells are the same as the products Ivoclar and its authorized distributors,

including Peterson, sell in that  they are all manufactured by IvoclarAG.  Cargus

admits that prior to the filing of the instant suit, the products were distributed

without the Material Safety Data Sheets or any warranty.  Since then, it has been

including the Data Sheets and a disclaimer of association with Ivoclar.  They have

also been offering their own warranty on the products.  The only difference

remaining in the products are minor differences in the labeling and packaging.

In or about September 2003, Ivoclar discovered that Cargus was distributing

some of its products, that the products had not been purchased from Ivoclar or

Peterson, and that they were being distributed by Cargus at prices substantially

lower than if distributed through Ivoclar or one of their authorized distributors.

Ivoclar immediately informed Cargus that it did not have its permission to sell the

---

[7] Among such dental supply companies is Tri-County Dental Supply, Inc. defendant in companion case 04-CV-0261E(F).

trademarked products, demanded that it immediately stop their sale and disclose its supplier information.  It did not indicate to Cargus that the products it was selling were not genuine or commercially fit for distribution in the United States, or that they were materially different from the products sold here through Ivoclar. Ivoclar stated that if Cargus did not stop selling the unauthorized product, legal action would be taken.  When Cargus did not comply, Ivoclar filed the instant suit[8].  Less than one month later, on May 12, 2004, Cargus informed Ivoclar that it considered the suit to be baseless and requested that it be discontinued.  At the same time, Cargus offered to provide disclaimer information to all who purchased the Ivoclar Vivadent products from it indicating that it had no affiliation with Ivoclar and was not authorized to sell its product.  It also stated that it would include the Material Safety Data Sheets when shipping the items to the consumers.   Ivoclar responded that the disclaimer was insufficient and nevertheless declined to withdraw the suit but again asked for information regarding Cargus's supplier.

The portion of the Sherman Act, alleged to have been violated in counterclaim Count II, states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. §1.

---

[8] Along with the three other companion suits referred to herein, *supra*.

The portion of the Wilson Tariff Act, alleged to have been violated in counterclaim Count III, states that

> "every combination, conspiracy, trust, agreement, or contract is declared to be contrary to public policy, illegal, and void when the same is made by or between two or more persons or corporations, either of whom, as agent or principal, is engaged in importing any article from any foreign country into the United States, and when such combination, conspiracy, trust, agreement, or contract is intended to operate in restraint of lawful trade, or free competition in lawful trade or commerce, or to increase the market price in any part of the United States of any article or articles imported or intended to be imported into the United States, or of any manufacture into which such imported article enters or is intended to enter."

15 U.S.C. §8.

Section 340 of New York's General Business Law, alleged to have been violated in counterclaim Count IV, similarly declares that

> "1. Every contract, agreement, arrangement or combination whereby
>
>    "A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
>
>    "Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
>
>    "For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is

hereby declared to be against public policy, illegal and void."

N.Y. Gen. Bus. Law §340(1).

All of the counterclaims employ the same factual allegations and legal principles and will be referred to by the Court collectively as the antitrust claims.[9] Moreover, because the claim to cancel the Ivoclar trademarks (Count VII) depends upon the sufficiency of the antitrust claims, it will also be referred to and decided in conjunction with the antitrust claims.

The antitrust claims allege violation of the respective laws by way of a restraint of lawful trade and the elimination of price competition

> "a.  through vertical price restraints for the purpose of fixing and maintaining wholesale and/or retail prices of Ivoclar Vivadent trademark products at Ivoclar USA's [Ivoclar] suggested retail price levels that are substantially above the price levels at which these products would be distributed and sold but for counterclaim defendants' unlawful anti-competitive conduct; and
> b.  the bad faith enforcement of Ivoclar Liechtenstein's [IvoclarAG] and Ivoclar USA's trademarks through "sham" litigation having the overall scheme to unlawfully extend the scope of their trademark rights."

---

[9] The antitrust provisions of the Wilson Tariff Act follow the same pattern as the Sherman Act and when a party has filed to make out a claim under section 1 of the Sherman Act, any attendant Wilson Tariff Act claim will also necessarily fail. *United States* v. *Cooper,* 312 U.S. 600, 608 (1941); *Hunt* v. *Mobil Oil Corp.,* 550 F.2d 68, 75 n. 8 (2d Cir. 1977); *Leider* v. *Ralfe*, 2003 WL 24571746, *2 fn 3 (S.D.N.Y. 2003).  Further, "New York's Donnelly Act, N.Y.Gen.Bus.L. § 340 is modeled on the Sherman Act, 15 U.S.C. § 1, and generally is construed in accordance with federal precedents. *Solla* v. *Aetna Health Plans of New York Inc.,* 14 F.Supp.2d 252, 259 - 60 (E.D.N.Y. 1998), *citing Re-Alco Industries, Inc.* v. *National Center for Health Education, Inc.,* 812 F.Supp. 387, 393 (S.D.N.Y.1993) and *Anheuser-Busch, Inc.* v. *Abrams*, 71 N.Y.2d 327, 335 (1988).

(Dkt. #14 - Answer and Counterclaims at ¶¶82 & 87[10]).

The claims do not allege that the counterclaim defendants directly attempted to control the price of these products in its interactions with Cargus or even between the counterclaim defendants themselves.  For example, there are no facts alleged that any of the counterclaim defendants ever instructed Cargus (or any of its authorized distributors) to sell the products at a certain price, or that a price directive was ever discussed with anyone[11].  There are no substantive factual allegations against IvoclarAG or Peterson, only conclusion and argument regarding collusion and conspiracy.  There are no allegations that the products at issue in the instant lawsuit, consisting of certain Ivoclar Vivadent trademarked products, were in any way unique to the market of dental supplies.

From the facts as enumerated above and in a light most favorable to Cargus, the Court can only infer that Ivoclar attempted to control the distribution of its products (and tacitly, the price thereof) by requiring that they be sold only by authorized distributors under strict marketing, quality control and packaging parameters and sued those who attempted to sell the products but were not authorized to do so.

---

[10] Count IV, the claim relative to New York's General Business Law, realleges and incorporates all prior allegations and additionally states that "[c]ounterclaim defendants' conduct unlawfully restrains competition and/or the free exercise of Cargus's business, trade and commerce." (Dkt. #14, ¶91).

[11] Although many conclusory allegations to this effect are made, there are no factual allegations in support thereof.

In their motion to dismiss the counterclaims, counterclaim defendants argue as follows that the antitrust claims fail as a matter of law.  The allegations amount to nothing more than an exclusive distributorship and Ivoclar's attempt to preserve it, which is presumptively lawful.  In order to negate this presumption, Cargus must allege that Ivoclar's attempt to exclude them from importing and distributing the trademarked products satisfies the Rule of Reason analysis. Under the Rule of Reason, Cargus must plead – and prove – an anticompetitive effect in a relevant market.  A relevant market is comprised of a geographic market which Cargus has pled[12] and a product market, which Cargus has not pled.  Therefore, Cargus's pleadings fail with respect to alleging facts in support of the essential finding of a product market.  More particularly because the product market is limited to certain Ivoclar Vivadent trademarked products (*i.e.*, a single brand),  it thus does not constitute a legally cognizable product market without further evidence of uniqueness to the market of these products to the extent that they can be considered a market unto themselves, facts which the counterclaims clearly do not allege.  Lastly, counterclaim defendants argue that "the fatal consequences of Cargus's failure to allege a product market become crystal clear when one attempts to answer the second, fundamental antitrust

---

[12] "The 'geographic market' is simply the geographic area where the competition occurs." *E&L Consulting, Ltd*. v. *Doman Industries Ltd.,* 360 F.Supp.2d 465, 471 (E.D.N.Y. 2005), *quoting, Beyer Farms, Inc.* v. *Elmhurst Dairy, Inc.,* 142 F.Supp.2d 296, 303 (E.D.N.Y.2001), *aff'd,* 35 Fed.Appx. 29 (2d Cir.2002) (other citations omitted).

inquiry:  Do counterclaim defendants have market power?". (Dkt. #24-2, p. 15).

Cargus failed to allege that counterclaim defendants possessed market power,

and without such there is no antitrust violation because consumers are able to

switch to a competitor's product in the event of a manufacturer's implementation

of an anticompetitive restraint.

The Court rejects Cargus's argument that counterclaim defendants' conduct

should be viewed as horizontal in nature (or that Cargus has properly pled as

such), subjecting it to a *per se* illegal analysis.  *See, Business Electronics Corp.* v.

*Sharp Electronics Corp.,* 485 U.S. 717, 724 - 30 (1988)[13]; *Oreck Corp.* v. *Whirlpool*

*Corp.,* 579 F.2d 126, 131 (2d Cir. 1978)[14].  Rather, the Court agrees with

counterclaim defendants' arguments and finds that the counterclaims are

defective and must be dismissed, primarily because they fail to allege or define

the product market.

---

[13] Rejecting a *per se* rule and applying the Rule of Reason analysis.  A restraint is not horizontal because it has horizontal effects but rather because it is the product of a horizontal agreement, — *i.e.*, a restraint imposed by agreement between competitors. *Business Electronics*, at 730.  The horizontal effect approach "is of course a conceivable way of talking, but if it were the language of antitrust analysis there would be no such thing as an unlawful vertical restraint, since all anticompetitive effects are by definition horizontal effects." *Id.* at fn 4.

[14] "It is important to distinguish between 'horizontal' restraints, *i.e.* agreements between competitors at the same level of market structure, and 'vertical' restraints, *i.e.* combinations of persons at different levels of the market structure, such as manufacturers and distributors. Horizontal restraints alone have been characterized as 'naked restraints of trade with no purpose except stifling competition' and, therefore, *per se* violations of the Sherman Act.  On the other hand, while vertical restrictions may reduce intrabrand competition by limiting the number of sellers of a particular product, competing for a given group of buyers, they also promote interbrand competition by allowing a manufacturer to achieve certain efficiencies in the distribution of its products.  They are, therefore, to be examined under the Rule of Reason standard."(internal citations omitted)

First, it must be noted that exclusive distributorship arrangements are presumptively legal. *Electronics Commc'ns. Corp.* v. *Toshiba America Consumer Prod., Inc.,* 129 F.3d 240, 245 (2d Cir. 1997). To overcome this presumption of legality, it must be alleged that the exclusive dealership causes harm to competition because it prevents competitors from getting their products to consumers altogether. *United States* v. *Visa U.S.A.*, *Inc.,* 344 F.3d 229, 242 (2d Cir. 2003). This is not a question in a vacuum, involving only the parties and the products at issue in this suit. "[T]he proper inquiry is whether there has been an 'actual adverse effect on competition as a whole in the relevant market.'" *Ibid.,* *quoting K.M.B. Warehouse Distrib., Inc.* v. *Walker Mfg. Co.*, 61 F.3d 123 (2d Cir. 1995). As stated *supra,* the relevant market looks at the overall product market within a geographical area.

> "With respect to product market, '[i]f a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand[15] *** a court may grant a Rule 12(b)(6) motion.'"

*E&L Consulting, Ltd.* v. *Doman Indus. Ltd.,* 360 F.Supp.2d 465, 472 (E.D.N.Y. 2005)(internal citation omitted). The Court construes this to provide for dismissal

---

[15] Cross-elasticity of demand relates to market power. "Retail market power is rare, because of the usual presence of interbrand competition and other dealers (*see Continental T.V., Inc.* v. *GTE Sylvania Inc.,* 433 U.S. 36, 54, 97 S.Ct. 2549, 2559-60, 53 L.Ed.2d 568 (1977)) and it should therefore not be assumed but rather must be proved." *Business Electronics Corp., supra,* at 727, fn 2.

under FRCvP 12(c) as well.  *See, Patel, supra; Irish Lesbian & Gay Org.*, *supra;*

*Sheppard, supra; Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n, supra.*

The products at issue herein are clearly of a single brand, *i.e.,* various

enumerated Ivoclar Vivadent trademarked dental apparatus.  The counterclaims

do not allege that the products are in any way unique to the market of dental

supplies, that there is an absence of comparable or substitute products, or that

they are essential for Cargus (who admittedly sell a wide variety of dental supply

products) to compete in the industry.  The antitrust claims fail to plead facts even

suggesting "some type of harm to competition market-wide" *(E&L Consulting,*

*Ltd., supra* at 475) and Counts II, III, IV and VII of Cargus' counterclaims will

therefore be dismissed.  Cargus will be granted leave to amend.

With respect to the counterclaim alleging tortious interference with

business relations (Count V), such fails to plead the essential facts in support of

such a claim and will be dismissed.  A claim of this nature is very difficult to

sustain and must therefore meet very demanding pleading and proof

requirements.  *See, G.K.A. Beverage Corp.* v. *Honickman,* 55 F.3d 762, 768 (2d Cir.

1995)(outlining four distinct elements which must be alleged in order to sustain

such a claim); *Kramer* v. *Pollock-Krasner Found.,* 890 F. Supp. 250, 258 (S.D.N.Y.

1995)(demanding requirements).  The Court will not address these requirements

in detail, but has considered them and hereby finds that Cargus has failed to

satisfy any of them, and its claim will therefore be dismissed.  Cargus will be granted leave to amend.

With respect to the counterclaim alleging civil conspiracy (**Count VI**), the Court finds that it contains only bare bones allegations of conspiracy without any supporting facts and will also be dismissed.  *See, Heart Disease Research Found. v. General Motors,* 463 F.2d 98, 100 (2d Cir. 1972); *Floors-N-More, Inc.* v. *Freight Liquidators,* 142 F. Supp.2d 496, 501 (S.D.N.Y. 2001).  Cargus will be granted leave to amend.

With respect to the pending discovery motions, the Decision and Order herein renders the motion to stay (Dkt. #38) moot and it is therefore denied.  The remaining motions (Dkt. #29, #33 and #37) *may* be rendered moot because the Decision and Order herein substantially changes the nature of the claims between the parties and their discovery needs, therefore, may also be substantially changed.  In the interest of judicial economy, these motions will be denied without prejudice and the Court will permit them to be re-filed *no sooner than* sixty days after the entry of the Decision and Order herein, subject to Cargus's filing of amended counterclaims (if, in fact it chooses to so file) and the parties' re-evaluation of their respective discovery needs.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that the counterclaim defendants' motion (Dkt. #23) to dismiss Cargus's counterclaims is **GRANTED**,

that the motion to stay (Dkt. #38) is **DENIED** as moot and that the motions to

compel and for a protective order (Dkt. ##29, 33 and 37) are **DENIED** without

prejudice.  Cargus shall have thirty days from the entry of this order to amend the

counterclaims.  An amended scheduling order shall follow.

DATED:      Buffalo, N.Y.

            August 23, 2006


                                        _____*/s/ John T. Elfvin*_____
                                             JOHN T. ELFVIN
                                             S.U.S.D.J.